IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| TONY EPPS, #450886 | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv407 |
| UNIVERSITY OF TEXAS MEDICAL BRANCH AT GALVESTON, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Tony Epps, currently confined in the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The lawsuit was referred for findings of fact, conclusions of law, and recommendations for the disposition of the case.

**Procedural History and Factual Background**.

Plaintiff initiated this lawsuit by filing an original complaint on July 10, 2020.[1] (Dkt. #1). He sued the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ"), the University of Texas Medical Branch at Galveston ("UTMB"), and Unknown Drug Company as defendants. The original complaint contained very broad and vague claims about the side-effects of a medication that Plaintiff was prescribed for the treatment of a viral condition. (Dkt. 1 at 4).

---

[1] His complaint was delivered to the prison officials on July 10, 2020. In *Houston v. Lack,* 487 U.S. 266 (1988), the Supreme Court established the prison "mailbox rule" and held that a *pro se* prisoner's complaint is deemed to be filed on the date that the prisoner submits the pleading to prison authorities to be mailed. *Id.* at 276; *see also Spotville v. Cain,* 149 F.3d 374, 376 (5th Cir. 1998) (per curiam) (holding that a *pro se* prisoner's § 1983 complaint is filed as soon as the pleadings have been deposited into the prison mail system).

1

Plaintiff did not name the medication that is the cause of his physical problems or describe the side effects that he is suffering from the medication.

Moreover, Plaintiff did not provide any specific dates, specific facts showing the personal involvement of any defendant, or the harm that he sustained as to the actions or inactions of each defendant. Plaintiff did not allege where he was housed in the Texas prison system when he was first prescribed the medications that he questions. He attached the Step Two of his Grievance No. 2020015207, dated December 15, 2019. In that Step Two, Plaintiff is identified as suffering from HIV and HCV. He was diagnosed with HIV in 1985 and has been in treatment for these viruses since 1991.

The Court therefore ordered Plaintiff to file an amended complaint (Dkt. #5) because of these deficiencies. He was directed to sue individuals who could be sued pursuant to 42 U.S.C. § 1983. He was instructed to state specific facts that would allow the Court to draw the reasonable inference that an individual defendant was liable for the harm alleged and that would defeat a qualified immunity defense. As such, he was given the opportunity to rectify deficiencies within his initial complaint. *See Eason v. Thaler*, 14 F.3d 8 (5th Cir. 1994).

After unsuccessfully challenging the Court's order (Dkt. #12), Plaintiff filed his amended complaint on September 29, 2020 (Dkt. #14). In his amended complaint, Plaintiff brought suit against Dr. David Callender, the President of UTMB, Dr. Raymund Greenberg, M.D., Ph.D., UTMB Executive Vice Chair of Health Affairs, and Lorie Davis, the then Director of TDCJ-Correctional Institutions Division. He alleged in general that the defendants conspired to use him and other inmates as test subjects for experimental drugs for the benefit of the unknown drug company. He asserts that he has had years of pain and suffering from on or about 1985 to 2018-20

from the use of this drug(s). Plaintiff did not name the drug in question or the drug company that was conspiring with the defendants. Likewise, Plaintiff did not allege any facts which would show that any named defendant took any action in the furtherance of the conspiracy. Mere conclusory allegations of conspiracy, absent reference to material facts, do not state a cause of action under Section 1983. *See Marts v. Hines*, 68 F.3d 134, 136 (5th Cir. 1995) (*en banc*).

On March 31, 2021, the Court ordered Plaintiff to file a response to an Order for More Definite Statement. (Dkt. #16). Despite requesting several extensions of time to respond (Dkt. ##17, 18, 22, 25), Plaintiff did not respond to the Order for More Definite Statement.[2]

On September 23, 2021, Plaintiff filed a Second Amended Complaint. (Dkt. #28). An amended complaint entirely supersedes and takes the place of an original complaint. *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 740 (5th Cir. 1986). As a result, the amended complaint will be the governing complaint in this case. Plaintiff sued Gilead Sciences, Inc., Dr. Melvin Wright, Dr. Maria Berger, Dr. Julius Danziger, and Dr. R. G. Peil.

As Plaintiff did not raise any claim against TDCJ, UTMB, TDCJ-CID, Unknown Drug Company, Dr. David Callender, Dr. Raymund Greenberg, and Lorie Davis in the Second Amended Complaint, the Court construed this pleading as a voluntary dismissal of these defendants pursuant to Fed. R. Civ. P. 41(a). (Dkt. #30). Plaintiff objected to the dismissal of UTMB because of a misunderstanding regarding the Eleventh Amendment immunity of state agencies. (Dkt. #33). His objection was overruled and TDCJ, UTMB, TDCJ-CID, Unknown Drug Company , Dr. David

---

[2] In the Court's Order for More Definite Statement, Plaintiff was warned that the failure to respond could and would result in the dismissal of his action for want of prosecution. (Dkt. #16 at 4).

Callender, Dr. Raymund Greenberg, and Lorie Davis were dismissed without prejudice from this action. (Dkt. #35).

In his Second Amended Complaint, Plaintiff generically alleges that Dr. Wright, Dr. Berger, and Dr. Danziger each knew that the drugs were a danger to Plaintiff and falsified records covering up the truth. (Dkt. #28 at 3). He asserts that Gilead Sciences, Inc.("Gilead") knew of the pain and suffering its drugs were causing Plaintiff and hundreds of thousands of other inmates in prisons around the United States and continued to distribute the drugs to UTMB and others to be given to inmates and Plaintiff, without telling them of the danger [the side effects] that the medications caused. (*Id.*).

Plaintiff states that he began taking medication for his viral conditions at the advice of TDCJ and UTMB medical staff in 1990. After taking the medication for a number of months, he began to have problems with his shoulder, back, and hip. He was told that he had arthritis. At age 40, he was told that he needed a hip replacement. Plaintiff was paroled in 2012. While on parole, Plaintiff continued to take the medications that he was prescribed while in TDCJ. His condition became worse, and he had to quit his job and seek medical help. Plaintiff was scheduled for a surgery at Dallas Parkland Hospital but did not have the surgery. In 2015, Plaintiff's parole was revoked.

He asserts that his bones began to rapidly deteriorate in 2016. In 2018, Plaintiff saw a surgeon who complained about "that damn medication." Upon his return to his unit, he examined his medical records and found that in 2001, UTMB and TDCJ-CID medical department were told,

"these four subjects presented with hypophosphatemia,³ suffered decreases in total body or spine bone mineral density 2 score, mean change from baseline in bone mineral density ranging from .04 percent to 1.0 percent across total hip, spine femoral neck and trochanter in the Truvada group compared with the placebo group." (Dkt. #28 at 6).

Plaintiff is seeking $20,000,000 in monetary damages for his pain and suffering over the past 20 years to the present from Defendant Gilead. He seeks prospective injunctive relief in the following form: Gilead shall: (a) pay for all persons living that have or will need operations in the amount of $750,000 for each hip, shoulder, back and neck, (b) inform every prisoner in writing of the cause and effect of the name drug, Truvada, and all other drugs that contain ingredients that can cause hypophosphatemia, and (c) pay all court costs, and attorneys' fees. As to Defendants Wright, Berger, and Danziger, Plaintiff requests that their medical licensure be striped for a period of three years.

### Preliminary Screening.

Plaintiff is an inmate in the Texas prison system who has been permitted to proceed *in forma pauperis*. As a prisoner seeking redress from an officer or employee of a governmental entity, Plaintiff's complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998) (per curiam). Because he is proceeding *in forma pauperis*, his complaint is also subject to screening under § 1915(e)(2). Both 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion

---

³ Hypophosphatemia is a serum phosphate concentration <2.5 mg/dl (0.81 mmol/L). Causes include alcohol use disorder, burns, starvation, and diuretic use. Clinical features include muscle weakness, respiratory failure, and heart failure; seizures and coma can occur. Treatment consists of phosphate supplementation. https://www.merckmanuals.com/professional/endocrine-and-metabolic-disorders/electrolyte-disorders/hypophosphatemia, last visited December 20, 2022.

thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id*. at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts, when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however, inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard, a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke*, 490 U.S. at 327; *McCormick v. Stadler*, 105 F.3d 1059, 1061 (5th Cir. 1997).

Plaintiff has been allowed to plead his best case. *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). Once "a plaintiff has had a fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Id*. at 792. (explaining that "plaintiffs cannot be allowed to continue to amend or supplement their pleadings until they stumble upon a formula that carries them over the threshold.").

**Discussion and Analysis**.

1. <u>Gilead is not subject to suit under Section 1983</u>.

Plaintiff may not sue Gilead in a lawsuit pursuant to 42 U.S.C. § 1983. Section 1983 provides a vehicle for a claim against a person "acting under color of state law," such as a state prison official, for a constitutional violation. *See Pratt v. Harris Cnty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016) (internal quotation marks and citation omitted); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002). A plaintiff in a civil rights lawsuit must show that the conduct complained of was committed by a person acting under color of state law. *See* 42 U.S.C. § 1983. A plaintiff can sue jail officials or medical staff in a section 1983 lawsuit because such officials are acting under color of state law. Here, Plaintiff's second amended complaint is devoid of any allegation which indicates that Gilead was acting under color of state law. Absent some allegation to establish Gilead as a "state actor," Plaintiff's complaint fails to state a constitutional claim against Gilead and his claims against it must be dismissed as frivolous.

In addition, Plaintiff has failed to state a constitutional claim against Gilead. Plaintiff's claim regarding Gilead actually sounds in tort law, *e.g.*, a products liability claim. Products liability claims, however, are matters of state tort law rather than federal law. *See* Tex. Civ. Prac. & Rem. Code, chap. 82 (products liability). The Supreme Court has said that many acts which may be

actionable as violations of state tort law do not amount to constitutional violations. *Baker v. McCollan,* 443 U.S. 137, 146 (1979). The fact that Plaintiff is an inmate in a state prison system does not elevate his claim automatically to a constitutional claim.

In this case, Plaintiff has neither shown the deprivation of a right secured by the Constitution or laws of the United States with respect to his products liability claim, nor that any other basis for federal jurisdiction, such as preemption or diversity,[4] exists. While the Court offers no opinion as to the merits of any state law claim which Plaintiff may raise in the courts of the State of Texas, he plainly has no federal cause of action with regard to a products liability claim against Gilead for the medications it creates and distributes.

2.      <u>Plaintiff has failed to show that he is entitled to relief against Wright, Berger, Danziger, and Peil</u>.

In his second amended complaint, Plaintiff alleges that Defendants Wright, Berger, and Danziger each "assist[ed] in the covering up of the suffering and carnage of Plaintiff's body by Gilead Sciences, Inc., UTMB, and TDCJ-CID medical staff by making false exam reports of Plaintiff's condition from drug(s) that was known to have debilitating side effects." (Dkt. #28, p. 12). Plaintiff asserts that Defendant Peil assisted in covering up Plaintiff's suffering and carnage from Gilead's drugs that were known to have debilitating side effects when he became aware of the danger by examining x-ray reports. (*Id.*). Plaintiff does not allege that any of the four individual defendants prescribed any of the unknown medications from Gilead that are allegedly causing Plaintiff's suffering and carnage to his body. He furthermore does not allege that any of the four defendants have seen, treated, examined, or prescribed any treatment for him regarding his

---

[4] Gilead maintains a branch office in Dallas, Texas. https://opencorporates.com/companies/us_tx/0013859406.

products liability claim against Gilead. He further has not alleged that any of the four defendants refused to treat him or deliberately ignored his medical issues.

Against the four individual defendants, Plaintiff's complaint is construed as a deliberate indifference to his serious medical needs claim. Under the Eighth Amendment, prison officials have a duty to provide adequate medical care. *Rogers v. Boatright,* 709 F.3d 403, 409 (5th Cir. 2013). An inmate seeking to establish an Eighth Amendment violation in regard to medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston,* 739 F.3d 740, 747 (5th Cir. 2014) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs" (quoting *Wilson v. Seiter,* 501 U.S. 294, 297 (1991) (emphasis in original)).

Deliberate indifference "is an 'extremely high' standard to meet" *Brewster v. Dretke,* 587 F.3d 764, 770 (5th Cir. 2009), and requires satisfaction of both an objective and a subjective component. *Rogers,* 709 F.3d at 410. An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell,* 463 F.3d 339, 345–46 (5th Cir. 2006). As to the subjective component, a prison official acts with deliberate indifference only where he (1) knows the inmate faces a substantial risk of serious harm, and (2) disregards that risk by failing to take reasonable measures to abate it. *Id.*; *see also Harris v. Hegmann,* 198 F.3d 153, 159 (5th Cir. 1999) (stating prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert,* 463 F.3d at 346. Similarly, an inmate's disagreement with the

9

medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997)), and a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In sum, an inmate must demonstrate that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985).

Here, Plaintiff has not alleged sufficient facts indicating that any Defendant violated his rights concerning his medical care. As an initial matter, the Court notes that Plaintiff self-diagnosed himself with hypophosphatemia and that the medications prescribed since the 1990s are the cause of his hypophosphatemia. A self-diagnosis, alone, will not support a medical conclusion. *See Kayser v. Caspari*, 16 F.3d 339, 346 (5th Cir. 2006).

Construing Plaintiff's claim in the light most favorable to him, Defendants Wright, Berger, and Danziger, at most, have incorrectly reported his physical exams. Defendant Peil reviewed x-rays reports. Even if Plaintiff is correct in his self-diagnosis of his medical conditions, it is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson*, 759 F.2d at 1238.

In the medical care context, "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346. Dissatisfaction with medical treatment or diagnosis does not constitute "deliberate indifference"

to a serious medical need and does not rise to the level of the denial of a constitutional right. *Estelle* 429 U.S. at 106; *Johnson*, 759 F.2d at 1238. Construed in the light most favorable to Plaintiff, his claims against Defendants amount to nothing more than negligence, malpractice, or misdiagnosis—which do not support a claim of deliberate indifference under section 1983. *See, e.g., Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1991) (explaining that "[m]ere negligence, neglect or medical malpractice" does not give rise to a § 1983 cause of action) (quoting *Fielder v. Bosshard,* 590 F.2d 105, 107 (5th Cir. 1979)).

Plaintiff has failed to allege facts that support his claim for relief to any reasonable degree of specificity. His assertions relative to "making false exam reports" are entirely conclusory, and he fails to provide the factual detail necessary to plausibly suggest that the false exam report is the cause of his medical problems or poses an unreasonable risk of serious damage to his future health. Rather, he provides a bare-bones allegation that the defendants are making "false exam reports" without providing a date or place as to when the false exam reports were created. In addition, Plaintiff provides no factual basis for any harm or injury that has been caused by or are associated with any alleged false exam report. These claims should be dismissed.

Plaintiff's claim that Defendant Peil reviewed x-ray reports and should have known that Plaintiff was taking medications produced by Gilead and that the medications were having an adverse effect on Plaintiff's body is speculative and conclusory at best. This claim also sounds in negligence. He does not provide any factual support as to where and when these x-ray reports were reviewed. Additionally, Plaintiff provides no factual basis for any harm or injury that has been caused by or are associated with the reviewing of x-ray reports. This claim should be dismissed.

3.  <u>Personal involvement is necessary to state a civil rights cause of action</u>.

Plaintiff claims that Defendants Wright, Berger, and Danziger made false exam reports, and that Defendant Peil reviewed x-ray reports, but he does not allege that any of the defendants prescribed the medications, knew the side effects of the medications upon Plaintiff's body, that his medications were the cause of his purported hypophosphatemia, or that any defendant knew that Plaintiff suffered from hypophosphatemia. To establish a viable section 1983 claim against a state official, an inmate must show that the state official was personally involved in the alleged constitutional violation. Personal involvement is an essential element of a civil rights cause of action. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983); *see also Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976) (holding that an affirmative link is needed between an injury and conduct of a defendant). Plaintiff has not alleged any facts that indicate any of the four individual defendants were personally involved in any alleged constitutional violation. This Court recommends that Plaintiff's claims against the defendants should be dismissed for the failure to state a claim.

## Conclusion

In conclusion, Plaintiff' second amended complaint fails to state a claim that rises to the level of a constitutional violation upon which relief may be granted. Plaintiff's claims against Defendant Gilead should be dismissed—as Gilead is not a person acting under color of law for the purposes of Section 1983. Plaintiff's claims against Defendants Wright, Berger, Danziger, and Peil should be dismissed because Plaintiff failed to allege any facts showing that any of the defendants were personally involved in any action or omission that deprived Plaintiff of his constitutional rights. Consequently, Plaintiff's second amended complaint should be dismissed as frivolous.

## Recommendation

It is therefore recommended that Plaintiff's suit be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(b).

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 21st day of December, 2022.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE